O

# United States District Court
# Central District of California

| | |
|---|---|
| MUHAMMAD KOWSER JAMAL,<br><br>                    Plaintiff,<br><br>       v.<br><br>JEH JOHNSON, *et al.*<br><br>                    Defendants. | Case № 2:15-cv-08088-ODW-AFM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9][11]** |

## I.  INTRODUCTION

Plaintiff Muhammad Kowser Jamal brings this action to compel the United States Custom and Immigration Services ("USCIS") to adjudicate and grant his application for adjustment of status. (Complaint ("Compl."), ECF No. 1.) Defendants Jeh Johnson, Leon Rodriguez, and Susan Curda ("Defendants") move to dismiss the Complaint and for summary judgment. (ECF No. 9.) Plaintiff also moves for summary judgment. (ECF No. 11.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, **DENIES** Plaintiff's Motion for Summary Judgment, and **DENIES** Defendants' Motion for Summary Judgment.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Plaintiff is a native and citizen of Pakistan who first entered the United States in February 1991. (Compl. ¶ 2; Exhibit A, Declaration of Allan S. DeBoer ("DeBoer Decl.") ¶ 3, ECF No. 9-1.) On December 2, 1992, Plaintiff applied for asylum with USCIS. (DeBoer Decl. ¶ 3.) An Immigration Judge granted Plaintiff asylum status on June 9, 2008. (Compl. ¶ 13; DeBoer Decl. ¶ 3.)

Plaintiff filed an application for adjustment of status to lawful permanent resident, colloquially known as a Form I-485, on June 25, 2009. (Compl. ¶ 14; DeBoer Decl. ¶ 5.) No decision has been rendered. Pursuant to its policy, USCIS placed Plaintiff's application on an adjudicatory hold because he admitted to engaging in activity that renders him inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(I) and 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd). (DeBoer Decl. ¶¶ 11–12, 16–17.) Both his application for asylum and for adjustment of status include information indicating that he was affiliated with the Mohajir Quami Movement ("MQM") from the mid-1980's until he left Pakistan in 1991. (*Id.* ¶¶ 11, 12.)

The MQM has engaged in violence aimed at its political opponents, Pakistani government forces, and civilians. (*Id.* ¶ 14.) For example, the MQM has abducted members of rival political groups, often resulting in death or torture. (*Id.* ¶ 15.) In May and June of 1992, the Pakistani army uncovered a chain of torture cells operated by the MQM where dissidents and political opponents were maimed or killed. (*Id.*) In addition, the U.S. State Department reports that, in 1995, the MQM engaged in extrajudicial killings and torture of their opponents and targeted police and security officials. (*Id.*) Also in 1995, the MQM called for violent strikes on numerous occasions, resulting in the deaths of law enforcement personnel and civilians. (*Id.*) The MQM also reportedly ransacked businesses that remained open and attacked motorists and pedestrians who ventured outside during the strikes. (*Id.*)

Plaintiff, however, claims his participation with the MQM was limited to setting up stalls in his school and neighborhood and distributing information about the MQM; decorating the streets and setting up for MQM speakers; making voting slips for MQM candidates; and working at the MQM head office. (*Id.* ¶ 12.)

On October 15, 2015, Plaintiff filed a Complaint requesting that the Court compel USCIS to adjudicate and grant his I-485 application. (Compl. ¶ 1.) On March 2, 2016, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. (ECF No. 9.) In the alternative, they moved for summary judgment on the basis that the delay in processing Plaintiff's application is not unreasonable. (*Id.*) Plaintiff opposes the Motion to Dismiss and cross-moves for summary judgment on the basis of collateral estoppel. (ECF Nos. 10, 11.) The Motions are now before the Court for review.

### III. LEGAL STANDARD

*A. Motion to Dismiss*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over the plaintiff's claims. A challenge to subject matter jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). A complaint may also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the factual allegations must suffice to state a claim that is "plausible on its face," that is, "plausibly suggesting (not merely consistent with)" a right to relief.

*Id.* at 557, 570. While the factual allegations of the complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555. Accordingly, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322 n. 3; *see also* Fed. R. Civ. P. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255. The Ninth circuit has long recognized "that summary judgment is singularly inappropriate where credibility is at issue." *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054–55 (9th Cir. 2008) (quoting *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978)).

## IV. DISCUSSION

### A. Status Adjustment

After an alien has been granted asylum and has been physically present in the United States for at least one year, he may apply for adjustment of status to lawful permanent resident. 8 U.S.C. § 1159(b). Neither the statute nor the regulations on

status adjustment provide a specific time frame within which the USCIS must adjudicate an application. *See* 8 U.S.C. § 1159(b); 8 C.F.R. § 209.2. In addition, the decision on the application is discretionary and rests unequivocally with the Attorney General or the Secretary under the asylee adjustment of status statute. *See* 8 U.S.C. § 1159(b); 8 U.S.C. § 1182(d)(3)(B)(i).

Pursuant to 8 C.F.R. § 209.2, when an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for lawful permanent resident status and that he is not a risk to national security or public safety. (DeBoer Decl. ¶ 7.) To be eligible for adjustment of status, the alien must be, *inter alia*, admissible under the Immigration Code. 8 U.S.C. § 1159(b). Under section 1182(a)(3)(B)(i)(I), a non-citizen is inadmissible if he "has engaged in terrorist activity," which includes providing material support to a "terrorist organization." 8 U.S.C. § 1182(a)(3)(B)(iv)(VI).

MQM meets the definition of an undesignated terrorist organization, commonly referred to as a Tier III organization, as described in 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (a group of two or more individuals, whether organized or not, which engages in terrorist activity). (DeBoer Decl. ¶ 16.) Thus, Plaintiff's involvement with the MQM likely renders him inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(I), as an alien who has engaged in terrorist activity. *See* 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).

**B. Exemptions to Terrorist Activity**

The Consolidated Appropriations Act, 2008, Pub. L. 110-161, 121 Stat. 1844 (December 26, 2007) ("CAA"), created a discretionary exemption by which the Secretary of Homeland Security can waive terrorist-related inadmissibility grounds as they relate to individual aliens. *See* 8 U.S.C. § 1182(d)(3)(B)(i). For an individual or category of individuals to be exempt from the terrorist-related inadmissibility provisions, the Secretary of Homeland Security, the Secretary of State, and the Attorney General must consult with each other. (DeBoer Decl. ¶ 20); 8 U.S.C. § 1182(d)(3)(B)(i). Such consultation includes the vetting of Tier III groups regarding

1 their backgrounds and actions, as well as consideration of national security,
2 humanitarian, and foreign policy concerns. (*Id.*) This deliberative process is lengthy.
3 (*Id.*)

4 Currently, there are no available exemptions that apply to the MQM or to
5 Plaintiff's individual circumstances. (DeBoer Decl. ¶ 14.) Accordingly, Plaintiff's
6 adjustment of status application would likely be denied under the terrorism-related
7 inadmissibility grounds if USCIS were required to complete adjudication of his I-485
8 application today. However, at this time, Plaintiff's application for adjustment of
9 status has been placed on "adjudicatory hold" to await the possibility of future
10 exemptions that might allow his application to be approved. (DeBoer Decl. ¶ 22.)

**C. Plaintiff's Complaint**

12 In his Complaint, Plaintiff requests that the Court compel USCIS to adjudicate
13 and grant his I-485 application. (Compl. ¶¶ 29, 31.) Alternatively, in his Motion for
14 Summary Judgment, Plaintiff asserts that USCIS should be collaterally estopped from
15 finding that he engaged in terrorist activity, since the Immigration Judge's grant of
16 asylum necessarily determined that Plaintiff did not provide material support to any
17 terrorist organization. (Compl. ¶ 26; Pla.'s Mot. Summ. J. 12, ECF No. 11.) His
18 Complaint does acknowledge that Plaintiff was affiliated with the MQM in Pakistan,
19 but alleges that his participation was "legal, democratic, and peaceful." (Compl. ¶¶
20 18–22.)

**D. Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment**

23 Plaintiff's request that the Court "compel USCIS to grant his [a]pplication" to
24 adjust status is hereby **DISMISSED**, because the Court cannot grant the requested
25 relief. (*See* Compl. ¶ 31.) The ultimate authority to grant adjustment of status is
26 "unquestionably discretionary," *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D.
27 Cal. 2007), and rests unequivocally with the Attorney General or the Secretary of
28 Homeland Security under the asylee adjustment of status statute. *See* 8 U.S.C. §

1159(b). As such, to the extent that Plaintiff seeks an individualized exemption determination from the Court, Plaintiff's Motion for Summary Judgment is denied.

The Court lacks jurisdiction to issue a declaratory judgment regarding Plaintiff's eligibility for adjustment of status or an individualized exemption, as neither the Declaratory Judgment Act, 28 U.S.C. § 2201, nor the Administrative Procedure Act ("APA") provide a basis for federal subject matter jurisdiction over this kind of relief. A court can grant declaratory relief only "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Indeed, the Declaratory Judgment Act "does not confer jurisdiction" and litigants seeking relief under the Act require an "independent jurisdictional basis." *Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853–54 (9th Cir. 2011).

Here, no independent basis for federal jurisdiction exists. The decision of USCIS to place an adjudicatory hold on Plaintiff's application was not a final agency action, as required to confer jurisdiction under the APA. *See Mamigonian v. Biggs*, 710 F.3d 936, 946 (9th Cir. 2013) (holding district courts have jurisdiction under the APA to hear cases challenging nondiscretionary eligibility determinations, provided that the agency's decision is final and there are no pending removal proceedings); *Ahmed v. Holder*, 12 F. Supp. 3d 747, 757 (E.D. Pa. 2014) (finding no jurisdiction to issue a declaratory judgment regarding plaintiff's eligibility for adjustment of status, where USCIS had placed plaintiff's application on an adjudicatory hold and had yet to issue a final determination regarding admissibility).

However, while the ultimate decision to grant or deny Plaintiff's petition is "unquestionably discretionary," and therefore insulated from judicial review, *see Dong*, 513 F. Supp. 2d at 1165, Courts have found that § 1252(a)(2)(B)(ii) does not similarly preclude plaintiffs from challenging the *speed* with which Defendants process applications. *See Khan v. Johnson*, 65 F. Supp. 3d 918, 924 (C.D. Cal. 2014) (finding jurisdiction over the pace of adjudication, and noting "there is a difference between the [government]'s discretion over *how* to resolve an application and the

[government's] discretion over *whether* it resolves an application.") (internal citation omitted) (emphasis in original). As such, this Court as well as others have found that § 1252(a)(2)(B)(ii) does not deprive federal courts of subject matter jurisdiction over claims alleging unreasonable delay in processing applications for adjustment of immigration status. *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014). Indeed, the government has a non-discretionary duty to adjudicate such a petition "within a reasonable period of time." *Beyene v. Napolitano*, C 12–01149 WHA, 2012 WL 2911838 (N.D. Cal. July 13, 2012). "To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Liu v. Chertoff*, C 07–00734 CRB, 2007 WL 2119427 (N.D. Cal. July 23, 2007). Accordingly, Plaintiff's claims related to the delay, and the delay alone, survive Defendants' Motion to Dismiss. But even if his delay arguments prove successful, the Court still lacks the authority to adjudicate the application itself. Therefore, Plaintiff's request that this Court make any kind of ultimate decision with respect to his status or eligibility is hereby dismissed, and Plaintiff's Motion for Summary Judgment is **DENIED**.

As far as the Court can tell, Defendants also move to dismiss pursuant to Rule 12(b)(6), contending that Plaintiff fails to state a claim for relief because the delay in processing inures to his benefit. (Mot. 8, 18.) Defendants argue that if Plaintiff's petition were adjudicated right now, it would likely be denied due to his prior involvement in MQM. (*Id.*) Having applied for a status adjustment in June 2009, Plaintiff has been waiting 7 years for his petition to be processed. (Compl. ¶ 14; DeBoer Decl. ¶ 5.) In the meantime, he alleges he has been deprived of the numerous advantages conferred by lawful permanent resident status, including the ability to petition for his wife to come to the United States and escape persecution. (Compl. ¶ 24.)

Numerous courts in this district have rejected the same argument Defendants make in their motion. *See Dosouqi v. Heinauaer*, C 12–3946 PJH, 2013 WL 664150

(N.D. Cal. Feb. 22, 2013); *Beyene*, 2012 WL 2911838; *Islam v. Heinauer*, C 10–04222 JSW, 2011 WL 2066661, at *2 (N.D. Cal. May 25, 2011) ("*Islam I* "). As in those cases, as here, the plaintiff avers that he continues to suffer irreparable harm due to Defendants' delay in processing his petition. (Compl. ¶ 24.) Therefore, the Court will not assume that an indefinite delay is in his favor. Viewing the allegations in the light most favorable to Plaintiff, "it is not only possible—it is plausible—that [he] could benefit from a final adjudication on his I–485 Application." *Islam I*, 2011 WL 2066661 at *4. Accordingly, the Court finds that Plaintiff states a viable claim upon which relief could be granted.

### E. Defendants' Motion for Summary Judgment

Defendants seek summary adjudication of Plaintiff's pending claims, disputing whether Plaintiff has experienced a delay that is, as a matter of law, unreasonable. (Def.s' Mot. 14.) The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. 706(1). *See Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001). The six factors (commonly referred to as the "*TRAC* factors") are as follows:

(1) the time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 1068 (quoting *Telecomms. Research & Action v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984).

*i. First Factor: Rule of Reason*

The first *TRAC* factor requires that the time an agency takes to make decisions be governed by a "rule of reason." *See TRAC*, 750 F.2d at 80. Terrorist-related determinations involving immigration applicants are "not made lightly" and "may be time-consuming." *Islam I*, 2011 WL 2066661, at *7. As discussed above, the undisputed evidence indicates that establishing an exemption to inadmissibility requires a deliberative process between multiple government actors. (DeBoer Decl. ¶ 20.) It is also apparent that this deliberative process is not a sham: between mid-2006 and July 1 2014, USCIs granted a total of 18,753 exemptions in cases involving terrorist related inadmissibility grounds. (DeBoer Decl. ¶ 18.)

When assessing the first *TRAC* factor for holds on Form I–485 Applications due to findings of terrorist-related inadmissibility, courts focus, in part, on the length of the delay. *See Qureshi v. Napolitano*, C–11–05814–YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, C06–06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (internal citation and quotation marks omitted); *see Dosouqi*, 2013 WL 664150, at *2 (finding that length of delay was the "dispositive fact" in *Beyene*, *Islam I*, and *Qureshi*).

In this district, courts have generally found delays of four years or less not to be unreasonable. *See Islam I*, 2011 WL 2066661, at *8 (point of unreasonableness had "not yet come" after three-year delay); *Sagier v. USCIS*, No. C11–05537 JSC, Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Cross Motion (ECF No. 19, 13:12) (four year delay "not yet unreasonable"); *Dousouqi*, 2013 WL 664150, at *X (delay of three and one-half years not unreasonable). By contrast, many courts applying the *TRAC* factors have declined to find that delays

exceeding six years are reasonable. *See, e.g.*, *Mugomoke v. Curda*, 2:10–CV–02166 KJM, 2012 WL 113800, at *9 (E.D. Cal. Jan. 13, 2012) ("Although even a nearly seven-year delay on an I–485 application is not presumptively unreasonable, defendants have not shown that the delay here is not unreasonable."); *Ahrary v. Curda*, 2:11–CV–02992–GEB, 2012 WL 1641411 (E.D. Cal. May 9, 2012) (defendants failed to show that eleven-year delay was not unreasonable); *Tewolde v. Wiles*, No. C11–1077JLR, 2012 WL 750542, at *9 (W.D. Wash. 2012) (denying defendants' motion for summary judgment for a nearly nine-year delay).

Here, Plaintiff's application has been pending for seven years and one month. (Compl. ¶ 14; DeBoer Decl. ¶ 5.) To the extent that the aforementioned district court cases establish helpful guideposts for determining when I–485 Application delay may or may not be reasonable, Plaintiff's circumstances fall somewhere on the outer edge. In *Qureshi*, the court found that a five-year delay was unreasonable where the defendants provided no indication of when the plaintiff could anticipate adjudication of his petition. 2012 WL 2503828, at *5. Accordingly, the court granted the plaintiff's motion for summary judgment and ordered the defendants to adjudicate the plaintiff asylee's application. *Id.* at *8.

Here, Plaintiff has waited over seven years for resolution of his I–485 request and the government has not indicated when, or even if, it will eventually adjudicate his petition. Instead, it states only that Plaintiff's application was placed on hold so that he could "potentially benefit from a future exercise." (Mot. 15.) Although the government's time-consuming exemption process "requires careful deliberation" and "the coordination of numerous agencies," *Qureshi*, 2012 WL 2503828, at *6, there comes a point where the seemingly indefinite delay of an I–485 petition becomes untethered from any discernable "rule of reason." *See Mugomoke*, 2012 WL 113800, at *7 ("[F]or defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable."). In light of the length

of delay and Defendants' unwillingness to indicate if or when Plaintiff's petition will be adjudicated, the first *TRAC* factor tips in Plaintiff's favor.

        ii.        *Second Factor: Statutory Scheme*

The presence of a statutory scheme—a congressionally-mandated timetable with which Congress expects the agency to proceed—may "supply content" for the "rule of reason" mentioned in the first factor. *SeeTRAC*, 750 F.2d at 80. Here, there is no congressionally-mandated timetable for adjudicating Form I–485 petitions. It is, however, the "sense of Congress" that an immigration benefit application should be processed within 180 days of the initial filing of the application. *See* Pub. L. 106-313, § 202, 114 Stat. 1262 (2000) (codified at 8 U.S.C. § 1571). However, in enacting the CAA seven years later, Congress did not reference or echo this timing guideline when requiring time-intensive consultation between three Cabinet agencies to determine whether alien applicants otherwise inadmissible on terrorism-related grounds should be granted an exemption. This factor tips neither in Plaintiff's nor Defendants' favor.

        iii.        *Third and Fifth Factors: Health, Human Welfare, and Prejudice*

The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay. *Islam I*, 2011 WL 2066661, at *7. There is little question that, to some extent, Plaintiff's welfare is at stake while he continues to sit in limbo, precluded from pursuing lawful permanent resident status. While Defendants acknowledge that the delay may be inconvenient for Plaintiff, they contend this inconvenience pales in comparison to their interest in complying fully with the congressional mandates of the CAA and the resulting USCIS policy. (Mot. 19.) As the court noted in *Islam I,* it is clear that "there are important interests at stake for both parties." *Id.* at *8. Accordingly, in these circumstances, these factors do not weigh heavily in either party's favor. *See id.*; *see also Beyene*, 2012 WL 2911838, at *8 (same); *but see Qureshi*, 2012 WL 2503828, at *6 (finding the third and fifth factors favor the plaintiff and holding that "a generalized concern over national security does

not provide sufficient justification to hold [plaintiff's] Application indefinitely.").

    iv. *Fourth Factor: Effect of Expediting Delayed Action*

  The fourth factor requires the Court to consider the effect of expediting adjudication of Plaintiff's application "on agency action of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants contend that an order requiring adjudication of Plaintiff's application would "intrude upon the discretion Congress has granted" the Secretary of Homeland Security to exercise his exemption authority. (Mot. 20.) However, based on the foregoing analysis, the only relief available to Plaintiff is an order compelling the USCIS to make a decision and process his application. *See Qureshi*, 2012 WL 2503828, *7 (rejecting government's argument that ordering adjudication will intrude on the Secretary's discretion and noting that "[t]he Court is not directing the USCIS how to adjudicate, but merely to adjudicate."); *Sagier*, No. C11–05537 JSC, ECF No. 19 at 13 (fourth factor weighs in the plaintiff's favor); *but see Beyene*, 2012 WL 2911838, at *8 (fourth factor tips in defendants' favor). Even though the Court would only require the USCIS to make a decision based on what the law currently is, the Court finds that an expedited adjudication would intrude on the USCIS's ongoing processes and agency priorities. Accordingly, this factor tips in neither Plaintiff's nor Defendants' favor.

    v. *Sixth Factor: Lurking Impropriety*

  Plaintiff does not contend that Defendants have acted in bad faith. Accordingly, this factor weighs slightly in Defendants' favor. Even so, a court applying the sixth *TRAC* factor "need not find that an agency acted in bad faith to conclude unreasonable delay." *Qureshi*, 2012 WL 2503828, at *7 (citing *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997)).

    vi. *Summary*

  With Plaintiff's petition pending just over seven years, and with no indication from Defendants of when or whether he can expect any decision in the future, Defendants have failed to show that the delay here is not unreasonable under the

*TRAC* factors.

## V. CONCLUSION

Because the Court cannot make a final determination as to Plaintiff's application, but can challenge the *speed* with which Defendants process his application, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss without leave to amend. (ECF No. 9.) In the same vein, Plaintiff's Motion for Summary Judgment is **DENIED** because the Court cannot make an individualized exemption determination as to Plaintiff's application. (ECF No. 11.) Lastly, because Defendants have not shown that the delay in processing Plaintiff's application is not unreasonable, Defendants' Motion for Summary Judgment is **DENIED.** (ECF No. 9.) The parties are directed to file a status report within thirty days of the date of this order.

**IT IS SO ORDERED.**

August 15, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**